RECEIPT # 72699
AMOUNT $ 350.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. _____
DATE 5/25/06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 MAY 25  A 10: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

William P. Monahan,

Plaintiff

v.

Willard Mitt Romney, individually
and as he is Governor of the
Commonwealth of Massachusetts,
Eric Fehrnstrom, Nicholas
Tzitzon, Shawn Feddeman and
Spencer Zwick.

Defendants

**06 CA 10921 NG**

Complaint
Civil Action No.

MAGISTRATE JUDGE _____

William P. Monahan complains of the defendants as set forth below.

## Parties

1.    Plaintiff William P. Monahan (Mr. Monahan), a citizen of the United

States and of the Commonwealth of Massachusetts, resides at 215 Cross Street, Belmont,

Massachusetts.

2.    Defendant Willard Mitt Romney, a citizen of the United States and of the

Commonwealth of Massachusetts, resides at 171 Marsh Street, Belmont, Massachusetts.

Defendant Romney is the Governor of the Commonwealth of Massachusetts and is sued

in his official and individual capacities.

3.     Defendant Eric Fehrnstrom, a citizen of the United States and of the
Commonwealth of Massachusetts.

4.     Defendant Nicholas Tzitzon, a citizen of the United States and of the
Commonwealth of Massachusetts.

5.     Defendant Shawn Feddeman, a citizen of the United States and of the
Commonwealth of Massachusetts.

6.     Defendant Spencer Zwick, a citizen of the United States and of the
Commonwealth of Massachusetts.

## Jurisdiction

7.     This Court has jurisdiction over the subject matter of Mr. Monahan's
claims against the defendants as they arise under the Constitution and laws of the United
States. 28 U.S.C. secs. 1331, 1343, 1367.

## Factual Allegations

8.     Defendant Romney, pursuant to Massachusetts G. L. ch. 7, s 4I, appointed
Mr. Monahan, by letter dated July 18, 2003, a member of the Massachusetts Civil Service
Commission. Defendant Romney also designated Mr. Monahan chairman of the
Commission. The term of the office to which defendant Romney appointed Mr.
Monahan expires on the first of March, 2008. A complete and accurate copy of
Mr. Monahan's letter of appointment, dated July 18, 2003, is attached to this complaint as
an exhibit and marked A.

9.     Defendant Romney executed, and the Secretary of the Commonwealth,
attested to, the commission dated July 18, 2003, by virtue of which Mr. Monahan

assumed the office of a member of the Commission. A complete and accurate copy of Mr. Monahan's commission is attached to this complaint as an exhibit and marked B.

10. Mr. Monahan, on July 22, 2003, took and subscribed the oaths required to qualify him to discharge the duties of his office. A complete and accurate copy of the document recording the oaths administered to Mr. Monahan and to which he subscribed is attached to this complaint as an exhibit and marked C. A complete and accurate copy of the certificate of Mr. Monahan's qualification is attached to this complaint as an exhibit and marked D.

11. Mr. Monahan entered on the duties of his office on August 1, 2003.

12. Four weeks later, on August 28, 2003, Mr. Monahan, while in his office at the Commission, received a telephone call from a reporter for the Boston Globe, Mr. Frank Phillips. Mr. Phillips had previously called Mr. Monahan's residential telephone number and spoke with his wife, who provided Mr. Phillips with her husband's office telephone number. Mr. Phillips asked Mr. Monahan if he had purchased a building at 253 Tremont Street, in Boston's theater district, from the Angiulo family in 1980 and had taken a loan from the seller in connection with the transaction.

13. Mr. Monahan responded to Mr. Phillips's question by informing Mr. Phillips that, in 1980 Mr. Monahan and Mr. Dominic R. Paulo purchased a building at 253 Tremont Street, Boston, Massachusetts, from Nicolo V. Angiulo, Genaro J. Angiulo, Francesco J. Angiulo, Donato Angiulo, and Michele A. Angiulo d/b/a Huntington Realty Co. for \$260,000. Mr. Monahan further stated to Mr. Phillips that he and Mr. Paulo paid the purchase price with a check for \$80,000 and a promissory note in the amount of

4

$180,000 at an annual rate of interest of 14%, the note secured by a mortgage that was duly recorded at the Suffolk County Registry of Deeds.

14.    The promissory note was paid in full in accordance with its terms and the mortgage discharged was filed in 1989 and duly recorded in the Suffolk County Registry of Deeds.

15.    After Mr. Monahan had left his office and arrived at his home in Belmont, Mr. Monahan's wife told him that he had received a call from a person in the office of defendant Romney. The caller told Mr. Monahan's wife that he would call back shortly.

16.    A few minutes later, Mr. Monahan received a telephone call from a person who identified himself as Nicholas Tzitzon. Mr. Tzitzon said to Mr. Monahan in substance that, "We've got a problem here. Some people want to talk to you."

17.    Acting in concert, defendant Eric Fehrnstrom, defendant Romney's Director of Communications, and defendant Shawn Feddeman, defendant Romney's Press Secretary, began speaking over the telephone to Mr. Monahan. Each spoke in a loud, angry, abusive tone that made Mr. Monahan extremely uncomfortable

18.    Mr. Monahan was asked if he had spoken with Mr. Phillips earlier in the day, and Mr. Monahan replied that he had done so within the past hour. Mr. Monahan was then asked if it were true that he had purchased a building from the Angiulos. Mr. Monahan replied that he had, twenty-three years ago, done so in an arms-length transaction that had been the subject of news reports in the local media at the time.

19.    Mr. Monahan attempted to explain the transaction, but defendant Fehrnstrom and defendant Feddeman repeatedly interrupted him. They asserted that his explanation did not matter, that the Boston Globe would publish a story recounting his

dealings with organized crime (the Angiulos,) and that the situation was embarrassing for defendant Romney.

20.     Defendant Fehrnstrom and defendant Feddeman demanded Mr. Monahan resign from his office as a member of the Commission. Defendant Fehrnstrom in substance told Mr. Monahan that he had to resign: " This is the Bulger story all over again," referring to Mr. William Bulger, the former president of the Massachusetts Senate and the former president of the University of Massachusetts, "If you resign, it's a one-day story; if you don't it's a ten day story." Mr. Monahan understood defendant Fehrnstrom to be referring to defendant's Romney's controversial effort to obtain Mr. Bulger's resignation from office as president of the university.

21.     Mr. Monahan understood defendant Fehrnstrom and defendant Feddeman as demanding Mr. Monahan's resignation and felt he was under a great deal of pressure. Mr. Monahan responded to them in substance that he had done nothing wrong and that he wanted to speak with defendant Romney directly. Defendants Fehrnstrom and Feddeman told Mr. Monahan that the defendant Romney was out of town for the weekend and he would get back to him upon his return.

. 22.     Shortly thereafter, Mr. Monahan received a telephone call from defendant Zwick, defendant Romney's deputy chief of staff and special assistant. Defendant Zwick, acting in accord with defendant's Tzitzon, Fehrnstrom and Feddeman in substance said to Mr. Monahan, "You've got to protect the Governor; you've got to take one for the team. You've got to resign." Defendant Zwick then gave Mr. Monahan a telephone number and requested that he send a copy of his resignation letter by facsimile to defendant Zwick.

23. Mr. Monahan told defendant Zwick that he did not want to resign and reiterated his request to speak with defendant Romney. Defendant Zwick told Mr. Monahan that defendant Romney was out of town but would call Mr. Monahan after the weekend. The telephone conversation then ended.

24. Shortly after completing the conversations with defendant Fehrnstrom , defendant Feddeman and defendant Zwick Mr. Monahan received a telephone call from a friend and an associate who worked on philanthropic and community oriented issues with Mr. Monahan. The friend attempted a conversation with Mr. Monahan but Mr. Monahan interrupted the conversation and stated in substance that he was very upset and disturbed. The friend inquired why and was solicitous of Mr. Monahan's condition. Mr. Monahan detailed all the previous upsetting conversations to the friend. The friend stated that he knew Mr. Phillips very well and that he would call him in regard the situation. The friend then stated that he would call Mr. Monahan back. True to his word, the friend called Mr. Monahan back within a short period of time and said that he had spoken with Mr. Phillips and that the Boston Globe would publish Mr. Phillips's article and that the article would now report that Mr. Monahan had resigned his office as a member of the Commission rather than the story about the real estate transaction with the Angiulos. True to that statement, Mr. Phillip's article was published and it reported that Mr. Monahan had resigned his office as a member of the commission.

25. Mr. Monahan a short time later received a telephone call from defendant Romney, who in substance said to Mr. Monahan, "Bill, my stomach is turning. I just had a state trooper chase me down with a cell phone. I am very discomforted." Defendant Romney continued, "Bill, I don't want to do this, and I don't agree with them, but my

senior staff is unanimous that I have to ask for your resignation. I don't want to do this, but I am outvoted."

26.     Mr. Monahan responded to defendant Romney in substance by reminding defendant Romney of the publicity that the Angiulo story had created in 1992 during a heated local political campaign, but defendant Romney said that " he did not recall the matter." Defendant Romney then said to Mr. Monahan in substance that he would help Mr. Monahan find a job in the private sector.

27.     Mr. Monahan responded to defendant Romney's request for Mr. Monahan's resignation by saying, in substance, "This is not just about a job. This is about my reputation and my family's good name." Mr. Monahan said further that he had done nothing wrong and that the story (about the real estate transaction) had been put to bed years ago.

28.     Mr. Monahan told defendant Romney that, if Mr. Monahan "thought that it were in defendant Romney's best interest or his own best interest for Mr. Monahan to resign, he would do so, but, since it would not be, he would not resign." Defendant Romney then gave Mr. Monahan a telephone number and said, in substance, "Here, take this number. You can reach [defendant Zwick] at it, and he can get a hold of me at any time."

29.     Mr. Monahan did not tender his resignation from his office as a member of the Commission to defendant Romney. Mr. Monahan also did not tender his resignation to any of the other defendants.

30.     The following day, August 29, 2003, the Boston Globe published a story that Mr. Phillips had written, the headline of which was "New Head of Civil Service

Resigns; Had Been Asked about a Loan from a Mobster." A complete and accurate copy of this article is attached as an exhibit and marked "E."

31.     The article that the Boston Globe published, Exhibit E, is defamatory and stigmatizing. In particular, it reports, falsely, that Mr. Monahan had resigned his office as a member of the Commission after Mr. Phillips had inquired about Mr. Monahan's past business relationship with Boston Mafia boss Gennaro Angiulo. Mr. Phillips had not inquired of Mr. Monahan concerning his status as a member of the Commission. The issue of resignation was never mentioned in their earlier conversation but it was nevertheless reported that Mr. Monahan had resigned, as defendant Feddeman falsely stated and implied. Mr. Monahan had no past business relationship with Gennaro Angiulo. The conjunction of these false and defamatory statements attached to Mr. Monahan the stigma of having been associated with organized crime figures, having deceived defendant Romney, and having been forced to resign his office as a member of the Commission following the disclosure of his deception causing irreparable harm to Mr. Monahan, inclusive of his physical and psychological health.

32.     About noon on August 29th, defendant Tzitzon called Mr. Monahan and told him that he had not received a facsimile copy of Mr. Monahan's letter of resignation, and asked Mr. Monahan when he would send it. Mr. Monahan responded in substance by stating that he was not sending a facsimile and that he had not resigned and was not resigning from his office has a member of the Commission.

33.     The following day, Saturday, August 30, 2003, Mr. Monahan directed his personal attorney to telephone defendant Zwick at the number that defendant Romney

had given to Mr. Monahan and reiterate that Mr. Monahan had not resigned his office as a member of the Commission.

34.     Defendant Romney, in November, 2003, appointed Mr. John J. Guerin to Mr. Monahan's office as a member of the Commission. Mr. Guerin began to serve as a member of the Commission in January, 2004.

35.     Defendant Romney did not afford Mr. Monahan a hearing prior to appointing Mr. Guerin to Mr. Monahan's office as a member of the Commission.

36.     Defendant Romney did not afford Mr. Monahan a hearing after appointing Mr. Guerin to Mr. Monahan's office as a member of the commission.

37.     At the time that defendant Romney acted to deprive Mr. Monahan of his office as a member of the Commission, the law of the United States and of the Commonwealth of Massachusetts clearly established that Mr. Monahan, as a public official appointed to serve a fixed term, could not be deprived of his office other than for cause; that a coerced resignation is, under the law of the United States and of the Commonwealth, equivalent to involuntary termination; that Mr. Monahan was entitled as a matter of constitutional and statutory right to a pre-termination hearing, there being no necessity that would warrant his termination followed by a post-termination hearing; and that the denial of a pre-termination hearing in the circumstances of Mr. Monahan's contested resignation would be wrongful and the proximate cause of actionable injury.

38.     The defendants knew or should have known that, as a matter of state law, defendant Romney had no cause to terminate Mr. Monahan's service as a member of the Commission.

39.     Defendant Romney knew or should have known the state of the law as alleged in paragraph thirty-seven when he purported to accept Mr. Monahan's resignation from his office as a member of the Commission.

40.     Defendant Romney knew or should have known the state of the law as alleged in paragraph thirty-seven when he appointed Mr. Guerin to Mr. Monahan's office as a member of the Commission.

41.     Defendant Romney acted with deliberate indifference to the state of the law as alleged in paragraph  thirty-seven when, following the inquiries that Mr. Phillips made of defendant Feddeman and the false and defamatory statements concerning Mr. Monahan that defendant Feddeman and defendant Fehrnstrom made to defendant Zwick and defendant Romney, defendant Romney purported to accept Mr. Monahan=s resignation from his office as a member of the Commission.

42.     Defendant Romney acted with deliberate indifference to the state of the law as alleged in paragraph thirty-seven when he appointed Mr. Guerin to Mr. Monahan's office as a member of the Commission.

43.     The defendants actions, all of which they took intentionally or with deliberate indifference to Mr. Monahan's constitutional rights, have caused Mr. Monahan and members of his family substantial monetary and emotional injury.

44      The defendants' further indicated their willful intention to interfere with Mr. Monahan's constitutional rights by causing the pass key he used to enter the parking garage of his place of work, a state office building, to be non functional prior to his next day of work.

## Statement of Claims

Claim One

Termination of Employment by
Chief Executive Official without
Notice and Pre-Termination Hearing -
Deprivation of Property Interest
Without Due Process of Law

45.     The defendants, acting individually and collectively, intentionally

deprived Mr. Monahan of his office as a member and position as chairman of the

Massachusetts Civil Service Commission, an office that he held for a fixed term and in

which he had a protected property interest. The defendants acted over Mr. Monahan's

objection, did not afford him notice or either a pre- or post-termination hearing, and

caused him to suffer substantial damages. The defendants are therefore liable to Mr.

Monahan in such amount as the trier of fact may determine.

Claim Two

False, Defamatory Accusations and
Termination of Employment -
Deprivation of Liberty Interest
Without Due Process of Law

46. The defendants, acting individually and collectively, intentionally deprived Mr. Monahan of his office as a member and position as chairman of the Massachusetts Civil Service Commission, an office that he held for a fixed term and in which he had a protected property interest. The defendants purported to act on the basis of newspaper reports and rumors, which were false and defamatory, concerning lawful business transactions that occurred more than twenty years ago, all of which worked to injure Mr. Monahan's reputation as a public official. The defendants acted over Mr. Monahan's objection, did not afford him notice or either a pre- or post-termination hearing, and caused him to suffer substantial damages, including the stigma of the termination of his employment following the publication of the defamatory statements. The defendants are therefore liable to Mr. Monahan in such amount as the trier of fact may determine.

## Claim Three

Coerced Resignation -
Deprivation of Property Interest
Without Due Process of Law

47. The defendants, acting individually and collectively, coerced Mr. Monahan to resign from his office as a member and position as chairman of the Massachusetts Civil Service Commission, an office that he held for a fixed term and in which he had a protected property interest. The defendants intimidated Mr. Monahan, denied him an opportunity to duly consider, and extracted his acquiescence to their demands. Subsequently they denied him the opportunity to withdraw his acquiescence as well as an opportunity for a hearing and caused him to suffer substantial damages. The defendants are therefore liable to Mr. Monahan in such amount as the trier of fact may determine.

Claim Four

Termination of Employment by
Chief Executive Official without
Notice and Pre-Termination Hearing -
Deliberate Indifference to
Constitutional Requirements of
Due Process of Law

48. The defendants, acting individually and collectively and with deliberate indifference to Mr. Monahan's constitutional rights to due process of law, deprived him of his office as a member and position as chairman of the Massachusetts Civil Service Commission, an office that he held for a fixed term and in which he had a protected property interest. The defendants acted over Mr. Monahan's objection, did not afford him notice or either a pre- or post-termination hearing, and caused him to suffer substantial damages. The defendants are therefore liable to Mr. Monahan in such amount as the trier of fact may determine.

14

## Claim Five

False, Defamatory Accusations and
Termination of Employment -
Deprivation of Liberty Interest with
Deliberate Indifference to
Constitutional Requirements of
Due Process of Law

49.     The defendants, acting individually and collectively and with deliberate

indifference to Mr. Monahan's constitutional rights to due process of law, deprived him

of his office as a member and position as chairman of the Massachusetts Civil Service

Commission, an office that he held for a fixed term and in which he had a protected pro-

perty interest. The defendants purported to act on the basis of newspaper reports and

rumors, which were false and defamatory, concerning lawful business transactions that

occurred more than twenty years ago, all of which worked to injure Mr. Monahan's

reputation as a public official. The defendants acted over Mr. Monahan's objection, did

not afford him notice or either a pre- or post-termination hearing, and caused him to

suffer substantial damages, including the stigma of the termination of his employment

following the publication of the defamatory statements. The defendants are therefore

liable to Mr. Monahan in such amount as the trier of fact may determine.

### Claim Six

#### Civil Conspiracy

50.     Defendants Tzitzon, Fehrnstrom, Feddeman, and Zwick, all members of

defendant Romney=s senior staff, agreed to and did act to coerce Mr. Monahan to resign

his office as a member of the Massachusetts Civil Service Commission. Acting in

concert, they exerted extreme pressure upon Mr. Monahan, nullified his effort to

convince defendant Romney that he should not seek Mr. Monahan's resignation, and took

other steps to obtain it. Mr. Monahan has suffered substantial injury as a result of the de-

fendants conspiracy, for which they are liable to him in such amount as the trier of fact

may determine.

### Claim Seven

#### Recission of Resignation
#### Obtained by Undue Influence

51.     Mr. Monahan is entitled to rescind his resignation of his office as a

member of the Massachusetts Civil Service Commission because the defendants exerted

undue influence upon him.

### Requests for Relief

WHEREFORE, plaintiff William P. Monahan requests that the Court:

1.     Enter judgment for Mr. Monahan on Claims One, Two, Four, Five, and

Six;

2.     Order that defendant Romney restore Mr. Monahan to his office as a

member and his position as chairman of the Massachusetts Civil Service Commission;

3. Order that defendant Romney direct that, as a concomitant of his restoring Mr. Monahan to his office, Mr. Monahan receive his back salary and that his retirement allowance be determined without reference to his wrongful removal; alternatively, enter judgment against defendant Romney individually in that amount that the trier of fact determines adequate to compensate Mr. Monahan for the loss of his salary and for the loss of time in service; and,

4. Enter judgment against defendants Tzitzon, Fehrnstrom, Feddeman, and Zwick in that amount that the trier of fact determines adequate to compensate Mr. Monahan for the injury that he has suffered as a result of their conspiracy and other unlawful conduct.

In the alternative,

5. Enter judgment for Mr. Monahan on Claims Three, Six, and Seven;

6. Order that defendant Romney restore Mr. Monahan to his office as a member and his position as chairman of the Massachusetts Civil Service Commission;

7. Order that defendant Romney direct that, as a concomitant of his restoring Mr. Monahan to his office, Mr. Monahan receive his back salary and that his retirement allowance be determined without reference to his wrongful removal; alternatively, enter judgment against defendant Romney individually in that amount that the trier of fact determines adequate to compensate Mr. Monahan for the loss of his salary and for the loss of time in service; and,

8. Enter judgment against defendants Tzitzon, Fehrnstrom, Feddeman, and Zwick in that amount that the trier of fact determines adequate to compensate

Mr. Monahan for the injury that he has suffered as a result of their conspiracy and other

unlawful conduct.

And,

9.    Grant such other or further relief as the Court determines just.

by his attorney,

Richard J. Hayes
11 Beacon Street
Suite 325
Boston, Massachusetts 02108
(617) 523-8773
BBO No. 227040